### In re ORMET CORPORATION, a Delaware corporation, et al.,[1] Debtors.

### Nos. 04–51255 to 04–51261.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 24, 2005.

---

1. The Debtors are the following entities: Ormet Corporation, Ormet Primary Aluminum Corporation, Ormet Aluminum Mill Products Corporation, Specialty Blanks Holdings Corporation, Specialty Blanks, Inc., Formcast Development Inc. and Ormet Railroad Corporation.

Kim Martin Lewis, Donald W Mallory, Dinsmore & Shohl LLP, Cincinnati, OH.

Adam C. Harris, Charles E. Bachman, O'Melveny & Myers LLP, New York, NY.

Robert E. Winter, O'Melveny & Myers LLP, Washington, DC.

David M. Fusco, Schwarzwald & McNair, Cleveland, OH.

Joseph J. Vitale, Cohen, Weiss and Simon LLP, New York, NY.

David R. Jury, United Steelworkers of America, Pittsburgh, PA.

Lee D. Powar, Hahn Loeser & Parks, Cleveland, OH.

Mark E. Palmer, Martin N. Flics, Linklaters, New York, NY.

Robert G. Sable, Michael D. Seese, James E. Van Horn, McGuireWoods LLP, Pittsburgh, PA.

Nick V. Cavalieri, Timothy B. McGranor, Bailey Cavalieri LLC, Columbus, OH.

***OPINION AND ORDER GRANTING RELIEF TO DEBTORS FROM CERTAIN RETIREE MEDICAL BENEFIT PLANS PURSUANT TO 11 U.S.C. § 1114, ORDERING BAR DATE NOTICE AND ORDERING REPORTS OF NEGOTIATIONS***

BARBARA J. SELLERS, Bankruptcy Judge.

## I. *INTRODUCTION*

This matter is before the Court on the conditional application of the debtors and

debtors in possession ("Debtors") pursuant to 11 U.S.C. § 1114. The application seeks to modify retiree medical benefit plans for hourly retirees at the reduction plant and rolling mill in Hannibal, Ohio, in the event that consensual agreements cannot be reached. The United Steelworkers of America ("USWA"), as the authorized representative of these retirees, opposed the Debtors' application. The official committee of unsecured creditors ("Committee") filed a memorandum in support of the Debtors' application. Beginning on February 16, 2005, the Court conducted an evidentiary hearing on the Debtors' application.

## II. *JURISDICTION*

■ USWA has raised the issue of this Court's jurisdiction to hear this matter. USWA maintains that this Court lacks jurisdiction to determine the Debtors' § 1114 motion because the Debtors have already obtained confirmation of a plan of reorganization. USWA argues that § 1129(a)(13) requires the Debtors to continue payment of retiree benefits at the level established prior to confirmation under either § 1114(e)(1)(B)("agreed-to-amounts") or § 1114(g)("court-ordered modification levels") for whatever period the debtor has obligated itself to provide such benefits. Therefore, modification of retiree insurance benefits after confirmation is not permitted.

Initially, the Court finds that this argument is not a jurisdictional one as that term is generally construed. This Court's jurisdiction is conferred by Title 28, United States Code, section 1334. Subsections 1334(a) and 157(a) confer jurisdiction in all bankruptcy cases upon the district courts and, by the standing order of reference entered in this district, upon the bankruptcy courts in this district. Further, pursuant to 28 U.S.C. § 157(b), this particular matter is a core proceeding arising in a case under Title 11. There is no question,

then, that this Court has jurisdiction to hear and determine the merits of these Debtors' application under section 1114 of the Bankruptcy Code.

USWA's argument is better understood as a challenge to the applicability of § 1114 of the Bankruptcy Code after a plan has been confirmed. Such a reading of §§ 1129(a)(13) and 1114, however, is unduly restrictive. Although these Debtors have had their plan confirmed, that plan has not yet achieved an effective date. One condition imposed upon the Debtors by the Committee and by the Maitlin–Patterson entities (as the holders of Certain New Term Notes to be issued under the plan), was the achievement of specified savings to come from reductions in retiree insurance benefits. That condition was modified to give the Debtors until the effective date to accomplish that goal.

Section 1129(a)(13) requires performance of any agreed-upon or court-ordered modifications from the effective date forward. Even though § 1129(a)(13) speaks of modifications ordered or agreed-to prior to confirmation, where the effective date will be several months after confirmation and all parties are aware that a § 1114 request may be made in that interim, the intent of § 1129(a)(13) is best realized by allowing an application under § 1114 after confirmation so long as the determination can be made prior to the effective date. Accordingly, the Court finds that the Debtors' application may be considered even though the plan has been confirmed.

## III. *THE DEBTORS' PROPOSALS*

The Debtors seek modifications to the retiree medical benefit plans at the reduction plant and rolling mill estimated to reduce such costs by approximately $5,100,000 yearly. There are currently 1,272 retirees at the reduction plant and 589 retirees at the rolling mill who would

be affected. At the option of USWA, future retirees from these same facilities will also be included in this proposal.

The principal terms and estimated cost savings of the Debtors' Section 1114 Proposals to USWA Locals Numbers 5724 and 5760, as outlined in the application, are as follows:

| Principal Modifications Contained In Section 1114 Proposal | Average Annual Cost Savings |
|---|---|
| • Designate a Benefit Trust to constitute a tax-exempt VEBA and to fund a single-employer employee welfare benefit plan (the "Benefit Plan") for current retirees at the Reduction Plan and Rolling Mill; | Approximately $5.1 million for hourly retirees at the Subject Facilities |
| • Create a VEBA Committee to administer the Benefit Plan, consisting of two individuals, one appointed by the Company and one appointed by the USWA; | |
| • VEBA Committee, as the named fiduciary and the plan administrator of the Plan, will have the sole discretion to determine the benefits to be provided to the retirees of the Benefit Trust, including the form and amount of such Benefits and the contributions that the retirees will make to help defray the cost of their coverage; | |
| • Company to pay the costs of establishing and administering the Benefit Trust and the Benefit Plan; | |
| • Company to make a fixed quarterly contribution to the Benefit Trust of $1.46 million (an annual total of $5.84 million) for current hourly retirees at the Subject Facilities; | |
| • Until the VEBA is established and operational, the Debtors may impose interim modifications on the current retiree program to generate savings of $1.275 million per fiscal quarter. | |

As fiduciaries, the VEBA Committee would be required to negotiate in the marketplace and purchase the best package of benefits for the retirees, given the funds available in the Benefit Trust.

## IV. *THE STATUTORY FRAMEWORK*

The statutory framework for the Debtors' request, in pertinent part, is set forth in 11 U.S.C. § 1114 as follows:

### § 1114. Payment of insurance benefits to retired employees

(a) For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

(b)(1) For purposes of this section, the term "authorized representative" means the authorized representative designated pursuant to subsection (c) for persons receiving any retiree benefits covered by a collective bargaining agreement or subsection (d) in the case of persons receiving retiree benefits not covered by such an agreement

. . . .

(c)(1) A labor organization shall be, for purposes of this section, the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party in interest, after notice and hearing, determines that different representation of such persons is appropriate.

. . . .

(e)(1) Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in pos-

session), shall timely pay and shall not modify any retiree benefits, except that—

(A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or

(B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments,

after which such benefits as modified shall continue to be paid by the trustee.

(2) Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title.

(f)(1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—

(A) make a proposal to the authorized representative of the retirees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (k)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits.

(g) The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);

(2) the authorized representative of the retirees has refused to accept such proposal without good cause; and

(3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities;

except that in no case shall the court enter an order providing for such modification which provides for a modification to a level lower than that proposed by the trustee in the proposal found by the court to have complied with the requirements of this subsection and subsection (f): *Provided, however,* That at any time after an order is entered providing for modification in the payment of retiree benefits, or at any time after an agreement modifying such benefits is made between the trustee and the authorized representative of the recipients of such benefits, the authorized representative may apply to the court for an order increasing those benefits which order shall be granted if the increase in retiree benefits sought is consistent with the standard set forth in paragraph (3); *Provided further,* That neither the trustee nor the authorized representative is precluded from making more than one motion for a modification order governed by this subsection.

. . . .

11 U.S.C. § 1114.

### V. *APPLICATION OF § 1114(f) TO THE FACTS OF THIS CASE*

Testimony and evidence adduced at the hearing track the provisions of § 1114(f). Subsequent to filing their petitions for relief under chapter 11 and prior to filing an application seeking modification of the retiree insurance benefits, the Debtors made a proposal to USWA, as the authorized representative of the retired employees at issue. Specifically, the date of filing for these chapter 11 cases was January 30, 2004. The Debtors delivered their formal § 1114 proposal to USWA on January 28, 2005, and filed their conditional application for modification of the retiree insurance benefits on February 2, 2005.

Testimony and other evidence further established that the proposal was based on the most complete and reliable information available at that time. Although USWA challenges the tenor of the Debtors' negotiations and the provision of information, it is uncontested that the amount of savings to be achieved from modifications of retirees' insurance benefits has been communicated for many months. The final details of that proposal were formally presented to USWA on January 28, 2005.

There was evidence during the hearing that USWA needed more time to review the economic analysis and to analyze the Debtors' projections of savings attributable to an alternative plan preferred by USWA. At the conclusion of the Debtors' case on February 16, the Court adjourned the hearing for one week to enable USWA to obtain additional data for its defense. Given that continuance of the hearing, the Court finds that the Debtors provided USWA with all relevant information necessary for the union to analyze and react to the Debtors' proposal. On balance, the information phase was fair.

▪ The Court also finds that the Debtors met at reasonable times with USWA in a good faith effort to attempt to reach a consensus on this matter. That no consensus has been reached does not change that conclusion. Although USWA describes the Debtors' negotiations as a "take it or leave it" proposition, there was little evidence to support that assertion. It appears that the union was focused on its alternative proposal rather than in reacting to and negotiating on the Debtors' proposal. Where one side wishes to change the subject, it cannot be said that the other side has refused to negotiate in good faith. Although the Court wishes that each side would expend more effort in hearing, considering and giving credence to the other's proposals, it cannot find that the Debtors failed to negotiate in good faith.

The interval between the two hearing dates enabled the parties to better quantify the potential savings which could be achieved from a workplace restructure. Perhaps those determinations and agreements will become part of a collective bargaining agreement ("CBA") which could eliminate the need for any reduction in retiree insurance benefits. No such agreement has been achieved to date, however, and the mere existence of an alternate possibility does not defeat the case made by the Debtors for the proposed modifications to retiree insurance benefits in the event there is no other mutually agreeable resolution of this matter.

▪ Section 1114(f)(1)(A) also requires that the Debtors' proposal provide for necessary modifications in retiree insurance benefits that are necessary to permit the reorganization of the Debtors. USWA argues that the Debtors' proposal does not meet this standard because equivalent savings can be achieved through other workplace restructuring efforts. USWA has

analyzed those workplace restructuring efforts and has identified savings that can be attained. There is no CBA in place which requires these changes, however. There also is no question that the need for quantifiable cost reductions and the Debtors' proposals for achieving those reductions has been known for some months. There was evidence of the extent of such reductions in the earlier § 1113 hearing.

The statute requires only that the necessary modifications sought in retiree benefits be necessary to permit reorganization of the Debtors. It does not require that only the proposed modifications would satisfy the requirement. Until a CBA has been executed, the plan as confirmed and the Debtors' uncontested economic projections require that a certain level of modifications be achieved through reduction of retiree insurance benefits. The Debtors' proposals would accomplish that goal. Although the retirees are understandably concerned and the Court would prefer a higher level of contribution to the VEBA by the Debtors, the proposed modifications appear to maintain medical insurance benefits for the retirees at levels comparable to those available for many workers in today's economic climate. Accordingly, the Court finds that the necessary modifications proposed are necessary to permit the reorganization of the Debtors.

■ Finally, the proposed modifications must assure that all creditors, the Debtors and all affected parties are treated fairly and equitably. In this regard, USWA alleges that many constituencies other than non-management employees are being given a stake in any future upside improvement in the Debtors' financial performance. USWA believes that the failure to so provide for retired employees' medical insurance benefits fails to satisfy the fair and equitable prong of § 1114(f)(1)(A).

The Court finds that the confirmed plan of reorganization requires all constituencies in this chapter 11 case to make considerable sacrifices in order that these Debtors may continue as viable enterprises. The Court further finds that the reduction proposed for retirees of the two Hannibal facilities is not different or discriminatory from that being imposed on other hourly retired employees or salaried retirees. The fact that the employee/retiree group is not being given stock in the reorganized Debtors does not make their treatment either unfair or inequitable. The existence of a limited stock bonus for certain senior executives does not change this result. Fair and equitable, in this context, does not mean identical. In considering the totality of the impact of the Debtors' financial problems on all of its constituencies, the Court finds that the proposed modifications to retiree medical insurance benefits are fair and equitable within the meaning of the statutory language.

## VI. *CONCLUSION*

For reasons cited herein, the Court finds that prior to the hearing on the Debtors' application the Debtors made a proposal to USWA, as the authorized representative of the retirees, that fulfills the requirements of § 1114(f). The Court also finds that USWA refused to accept that proposal without good cause. In fact, the only reason given for the refusal was that USWA would prefer to achieve the necessary cost savings in another manner. That preference alone is not a valid reason to reject the Debtors' modification proposal.

The Court further finds that the modification proposed is necessary to permit the reorganization of the Debtors, and that all creditors, the Debtors and all the affected parties are treated fairly and equitably. Finally, the proposed modifications are clearly favored by the balance of the equities. The savings proposed must be au-

thorized to permit the confirmed plan to become effective and the exit financing to be consummated. Unless a CBA is achieved prior to that time which would cause the Committee and Maitlin–Patterson to waive the requirement for reductions in retiree medical insurance benefits, the modifications will need to be implemented.

For all the foregoing reasons, the Debtors' conditional application for relief from certain retiree benefit plans is hereby **GRANTED** and the Debtors are authorized to modify the retiree medical benefit plans for these retirees as described in the § 1114 proposal.

The Debtors shall serve this Order and shall separately notice any bar date arising from this Order. Such notice shall grant parties at least thirty (30) days from the service of the bar date notice to file any claims arising from the modifications authorized by this Order.

The parties are also hereby ordered to continue negotiations toward achieving a collective bargaining agreement. Such negotiations shall involve at least two face-to-face meetings per week. There shall also be a joint report of the progress of such negotiations filed with the Court each week.

**IT IS SO ORDERED.**